UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KATHY DOWNS | CIVIL ACTION |
| VERSUS | NO: 08-5131-AJM-SS |
| MICHAEL J. ASTRUE, COMMISSIONER<br>OF SOCIAL SECURITY<br>ADMINISTRATION | |

## REPORT AND RECOMMENDATION

The plaintiff, Kathy Downs ("Downs"), seeks judicial review, pursuant to Section 405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for disability insurance benefits and a period of disability under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, and her claim for supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1382(a)(3).

## PROCEDURAL HISTORY

On February 26, 2007, Downs submitted applications for benefits, r. 85-90, alleging that she became disabled on March 1, 2005. R. 89. She reported that a head injury caused an impairment in her speech. R. 121. She also reported panic attacks, depression, and headaches. R. 155. On April 17, 2007, the Commissioner denied her applications for benefits. R. 58-61. On February 26, 2008, there was a hearing before an Administrative Law Judge ("ALJ"). R. 24-55. Downs signed a waiver of representation. R. 74-75. On June 26, 2008, the ALJ issued an unfavorable decision. R. 7-18. On October 7, 2008, the Appeals Council denied her request for review. R. 1-3. On December 17, 2008, she filed a complaint with this Court. Rec. doc. 1. It was amended. Rec. doc. 4. The parties filed cross-motions for summary judgment. Rec. docs. 21 and 22.

Downs appears in proper person. She has represented herself throughout these proceedings.

## STATEMENT OF ISSUES ON APPEAL

Downs' motion for summary judgment includes a single page. She reports that: (1) because of her head injury, she suffered from brain damage which left her with a serious speech impairment; (2) she sought help at the Louisiana Rehabilitation Service; (3) she suffered from blackouts which she could feel coming; (4) she could have a blackout at any place or time; (5) she considered herself a liability; (6) there was an incident on February 2, 2009 at the Post Office in Marrero, Louisiana; and (7) she took Prozac. Rec. doc. 21. She attached a November 18, 2008, psychological evaluation. Id. The issues presented are:

1. Was the ALJ's decision supported by substantial evidence?

2. Does the November 18, 2008 psychological evaluation justify remand?

## THE COMMISSIONER'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following findings relevant to the issues on appeal:

1. Downs met the non-disability requirements for a period of disability and disability insurance benefits set forth in section 216(i) of the Act through June 30, 2008.

2. Downs has not engaged in substantial gainful activity since March 1, 2005 (20 CFR §§ 404.1520(b) and 416.920(b)).

3. Downs has the following severe impairment: back problems and depressive disorder (20 CFR §§ 404.1520(c) and 416.920(c)).

4. Downs did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, Regulations No. 4 (20 CFR §§ 404.1520(d) and 416.920(d)).

5. Downs had the residual functional capacity to perform all exertional levels of work but was limited to one and two step job tasks after receiving one and two step job instructions. She needed to work with things and data rather than people. This residual functional capacity was consistent with the record evidence.

6. Downs was able to perform past relevant work (20 CFR §§ 404.1565 and 416.965).

7. Downs was born in 1952 and was 52 years old on the alleged disability date, which is defined as an individual approaching advanced age (20 CFR §§ 404.1563 and 416.963).

8. Downs had at least a high school education and was able to communicate in English (20 CFR §§ 404.1564 and 416.964).

9. Downs has a semi-skilled work background (20 CFR §§ 404.1568 and 416.968).

10. Considering Downs' age, education, work experience, and residual functional capacity, she can also perform other occupations with jobs existing in significant numbers in the national economy (20 CFR §§ 404.1560(c), 404.1566, 404.1568(d), 416.960(c), 416.966 and 416.968(d)).

11. Downs has not been under a disability, as defined in the Act, from March 1, 2005 through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

R. 12-18.

## ANALYSIS

a. **Standard of Review.**

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971); Perez, 415 F.3d at 461. Alternatively, substantial evidence may be described as that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000). This court may not re-weigh the evidence, try the issues *de novo* or substitute

its judgment for the Commissioner's.  Perez, 415 F.3d at 461; Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The administrative law judge is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.  See Arkansas v. Oklahoma, 503 U.S. 91, 113, 112 S.Ct. 1046, 1060 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it.  Villa, 895 F.2d at 1022; Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995).

To be considered disabled and eligible for disability insurance benefits, plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (1997).  The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.  Id. §§ 404.1520, 416.920; Perez v. Barnhart, 415 F.3d at 461; Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 514 U.S. 1120, 115 S. Ct. 1984 (1995).[1]  The five-step

---

[1] The five-step analysis requires consideration of the following:
First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).
Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520©, 416.920©.

4

inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry. Id. If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing. Greenspan, 38 F.3d at 236; Kraemer v. Sullivan, 885 F.2d 206, 208 (5th Cir. 1989). When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant." Id.; accord Selders, 914 F.2d at 618.

"In determining whether substantial evidence of disability exists, this court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective medical evidence of pain and disability; and (4) the claimant's age, education, and work history." Perez v. Barnhart, 415 F.3d at 462. "The Commissioner, rather than the courts, must resolve conflicts in the evidence." Martinez v. Chater, 64 F.3d 172, 174 (5th Cir. 1995).

b. **Testimony at the Hearing.**

Downs' request for a week to add medical records to the record was granted and the ALJ left

---

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994) ("Medical-Vocational Guidelines").

the record open for thirty days.² R. 31-32. Downs declined the opportunity to make an opening statement. R. 32.

At the time of the hearing she was 55. R. 32. She weighed 160 pounds. R. 32. She was 5'3" tall. R. 33. She was single. R. 33. She was not working. R. 33. Her sole income was child support. R. 33. She had four children. One of her children was under age. R. 33. She received assistance from a housing program. R. 34. She could not drive. R. 34. She had a valid driver's license which required that she use glasses. There were no other restrictions. R. 34. She completed the twelfth grade. R. 34. She had nine months of vocational training as a clerk typist. R. 34.

From 1993 to 1995, she worked as mail sorter. R. 36. The job required that she stand. R. 36. From 1997 to 1999, she worked as a sales inspector. R. 35. She sat to perform the job. R. 36. In 2000, she worked as a cashier at a Big Lots' store. R. 36. The job required her to stand. R. 36. She worked as a file clerk, which required her to sit and stand. R. 36-37.

Downs slipped, fell and hit her head. As a result of the injury to her head, she lost her speech. She becomes nervous. She has fallen and hit her head a couple of times since the first fall. R. 37. She believed that the doctors thought she had seizures. R. 37.

Downs could not walk more than a block or so. R. 38. She walked slowly. R. 38. Sometimes she experienced light flashes when she walked. R. 38. She was not limited in her ability to stand. R. 38. She was not on medication. R. 39. She had not been hospitalized for her conditions or received physical therapy for them. R. 39. She was able to take care of her personal hygiene and dress herself. R. 39. With her eyeglasses, she could see. She was able to hear. R. 39. Her memory was intact. R. 40. She was in some pain. R. 40. She did not get much sleep at night.

---

² The hearing was on February 26, 2008. R. 24. The ALJ did not issue a decision until June 26, 2008 (R. 7), so the there was a four month interval between the hearing and the decision.

R. 40. She did not take medication to help her sleep because she was afraid she may not wake up. R. 40. She became very anxious when she was in a crowd of people. R. 40. She watched television. R. 41. She did not do much housework. She washed the dishes after using them and vacuumed the floor once in a while. She washed clothes about every other week. R. 41. During the day she sat in a chair and watched TV. R. 42. She could not do much because of the speech problem. She could not tend her home or talk on the phone. Because of the risk of falling down, someone had to be with her when she walked. R. 42.

Downs' daughter testified that her mother used to like to walk and spend time with her children. R. 43. Because of the dizzy spells, her mother was not comfortable with walking. Before the fall her mother was a principal care-giver for her large family. R. 44. Her daughter was afraid to leave children with Downs because she might pass out. R. 44. At family functions, her mother appeared claustrophobic. R. 44. In those situations she became nervous, experienced panic attacks and started crying. R. 44. When they came to the hearing her mother experienced some of these problems. R. 44-45. Her speech declined rapidly after the fall. R. 45.

The vocational expert testified that, based on the ALJ's hypothetical, Downs could perform some of her past relevant work. R. 49-50. She was capable of performing jobs in the national economy. R. 50. If she was limited to working with things and data instead of people, she could not perform any of her past relevant work. R. 50-51. With this limitation, she could perform jobs in the national economy. R. 51.

c. **Medical Evidence**.

On March 30, 2004, Downs was seen at the emergency room at Meadowcrest Hospital. She slipped getting off a bus and hit her head. Excedrin was prescribed. She was diagnosed with a head

7

trauma. R. 163-166.

On January 26, 2006, Downs was seen at the Earl Long Medical Center on a referral for an MRI. R. 169. On February 1, 2006, an MRI of the brain was taken. There was no evidence of acute intracranial hemorrhage or infraction and no masses. The impression was microvascular ischemic changes within the deep cerebral white matter. R. 170. On May 3, 2006, Downs was seen for an initial neurology visit at Earl Long Medical Center. R. 167-68 and 207-08.

On September 8, 2006, Downs was seen by Miljana Mandich, M.D., an internist, for a consultative examination. She reported that she had speech problems after she fell and hit her head. She also reported she sprained her lower back in March, 2003 in the X-ray film library at Ochsner Hospital when she was trying to transport a heavy tray. She had not worked since that incident. Her medical records from Meadowcrest indicated that in March 2004, she slipped getting off a bus, fell backward and struck her head against a step on the bus. She appeared somewhat depressed and had a flat effect. Her physical examination, including a neurological examination, was completely unremarkable. Her speech also was unremarkable. R. 172-76.

On April 5, 2007, Downs was seen at the Medical Center of Louisiana in New Orleans ("MCLNO") in the neurology department. She was scheduled to return after an MRI. Medication was prescribed. R. 219. On July 5, 2007, she was seen at the MCLNO. She would not take an MRI unless it was open because she was claustrophobic. R. 218. On November 29, 2007, Downs was seen at the MCLNO for a follow-up after a head injury. She complained of blackouts. An EEG was ordered. R. 217. On December 12, 2007, an EEG was conducted. Downs complained of black-out spells. The EEG was within normal limits. R. 211-12 and 220-21. On March 6, 2008, Downs was seen at the MCLNO. She was to return on May 8, 2008. R. 216.

8

On May 20, 2008, Downs was seen by Daniel Trahant, M.D., a neurologist, for a consultative examination. Dr. Trahant reported that the neurological examination was entirely normal. He did not recommend that she be placed on any restrictions. R. 223-231.

e. **Plaintiff's Appeal.**

Issue no. 1.    Was the ALJ's decision supported by substantial evidence?

Downs contends that when she fell in February 2005, she sustained a head injury, including brain damage. She urges that this left her with a speech impairment. She reports that the head injury also produces blackouts or fainting spells. Rec. doc. 21.

The ALJ found that Downs suffered from back problems and depressive disorder. R. 12. He determined that Downs' medically determinable impairment could reasonably be expected to produce her alleged symptoms but her statements concerning the intensity, duration and limiting effects of these symptoms were not entirely credible. R. 13. The ALJ reviewed the medical records, the report of the September 8, 2006 examination by Dr. Miljana Mandich, and the report of the May 20, 2008 examination by Dr. Daniel Trahant. R. 13-16. After summarizing the medical evidence, the ALJ stated:

> There is simply nothing in evidence to support the claimant's allegation of an inability to perform work activity. The evidence establishes that the claimant can perform work activity at all exertional levels.

R. 16.

On March 30, 2004, Downs appeared at the Medowcrest Hospital emergency room. She reported that as she was getting off a bus, she slipped on the steps and hit her head. She complained of pain to her head and her back at the right shoulder blade. Excedrin was prescribed. R. 163-66. On September 8, 2006, Downs was examined by Dr. Mandich, an internist. His report states:

9

> The patient appeared to me somewhat depressed and of having very flat affect. She also told me that she usually stays up until early morning hours watching television and then sleeps only three or four hours. She however denies any history of psychiatric problems and she denies being depressed. Her physical examination is completely unremarkable including neurological examination and including her speech at the time of this examination.

R. 176. A December 12, 2007, EEG was within normal limits. R. 211. On May 20, 2008, Downs was examined by Dr. Trahant, a neurologist. His report states:

> The neurological examination itself was entirely normal with no focal or localizing signs. The speech pattern displayed by Ms. Downs, in my opinion, is most likely psychogenic in origin; it does not have a typical expressive aphasic[3] characteristic. Speech disturbance did follow a history of head trauma, but the trauma itself seems somewhat innocuous in that there was no loss of consciousness or laceration, and CT scan of the brain the day after the injury, as well as MRI scan of the brain in 2006 were both normal.
>
> I would not place Ms. Downs on any restrictions, and she appears neurologically intact. Further review of the medical records indicates an EEG preformed on December 12, 2007, revealed no focal or epileptiform abnormalities.

R. 224 (footnote added). Dr Trahant completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical), in which he indicated that Downs could perform work that involved lifting up to 50 pounds, sitting seven hours per day, standing seven hours per day, and walking five hours per day. R. 226.

Downs and her daughter testified to her inability to work. The ALJ found that Downs' statements were not entirely credible. The medical evidence, including the reports of Drs. Mandich and Trahant, demonstrate that there is substantial evidence to support the ALJ's findings. A reasonable mind may accept this medical evidence to support the ALJ's conclusion that Downs could perform work activity at all exertional levels. Carey, 230 F.3d at 135.

---

[3] "Impaired or absent comprehension or production of, or communication by, speech, writing, or signs, due to an acquired lesion of the dominant cerebral hemisphere." Stedman's Medical Dictionary (26th Ed. 1995), at 112-13.

<u>Issue no. 2</u>.    Does the November 18, 2008 psychological evaluation justify remand?

With her motion for summary judgment, Downs submitted a psychological evaluation. On November 18, 2008, Downs was tested and evaluated by Christine Powanda, Ph.D., a psychologist. Rec. doc. 21 (Attachment). The evaluation was performed about five months after the ALJ issued his decision.

The issue presented by Downs' submission of this psychological evaluation is whether the case should be remanded to the ALJ for consideration of this additional medical evidence. Downs' motion for summary judgment will be treated as presenting a request for a remand. Under 42 U.S.C. § 405(g) a claimant's motion to remand is to be granted "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. . . ." In <u>Castillo v. Barnhard</u>, 325 F.3d 550 (5th Cir. 2003), the Fifth Circuit stated that, "[n]ew evidence may be grounds for remand if its is material; this materiality inquiry requires determining whether the evidence relates to the time period for which the disability evidence relates to the time period for which the disability benefits were denied. . . ." <u>Id</u>. at 551-552.

The alleged onset date was March 1, 2005. R. 10. The ALJ's decision is dated June 26, 2008. R. 18. These dates are the period for which disability benefits were denied. The November 18, 2008 psychological evaluation does not relate to this period. There is no basis for a remand.

**RECOMMENDATION**

Accordingly, IT IS RECOMMENDED that defendant's cross-motion for summary judgment (Rec. doc. 22) be GRANTED and plaintiff's motion for summary judgment (Rec. doc. 21) be DENIED.

**OBJECTIONS**

11

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 26th day of October, 2009.

**SALLY SHUSHAN**
**United States Magistrate Judge**